IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| SPRING HILL BEECHCROFT ROAD LLC, ) ) ) | |
| Plaintiff, ) ) | Case No. 1:22-cv-00049 |
| v. ) ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE HOLMES |
| MAGNA SEATING OF AMERICA, INC., ) ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court are cross motions for summary judgment filed by Plaintiff Spring Hill Beechcroft Road I LLC ("Spring Hill") and Defendant Magna Seating of America, Inc. ("Magna") (Doc. Nos. 53, 55). The motions are fully briefed and ripe for review. (*See* Doc. Nos. 54, 56, 68, 71, 72, 74). For the reasons stated herein, the motions for summary judgment will be **DENIED**.

### I. BACKGROUND[1]

In 2021, the parties entered into negotiations to expand the manufacturing plant Magna leased from Spring Hill. Once finalized, the expansion project was to be memorialized by way of an amendment to the original lease agreement (the "Second Amendment"). While the parties were negotiating the details of the expansion and lease amendment, Magna and Spring Hill entered into a Reimbursement Agreement under which Spring Hill agreed to take "early start" actions and incur certain costs toward the construction of the expansion and Magna agreed to reimburse Spring Hill

---

[1] The parties have filed over 200 statements of fact (*see* Doc. Nos. 56, 58, 67) and over 2700 pages of exhibits (Doc. Nos. 56, 57, 59, 60, 61, 62, 63, 66, 69, 70). Because there are disputes of fact that preclude summary judgment for either party, the discussion of the underlying facts is truncated.

for these costs "[i]f the Parties have not executed the Second Amendment on or before the earliest to occur of (i) February 28, 2022, or (ii) the effective date of the Termination Notice." (Reimbursement Agreement, Doc. No. 57-6). The "Termination Notice" provision stated that Magna may terminate negotiations "at any time prior to February 28, 2022" by giving [Spring Hill] written notice of such termination pursuant to the notice provision" in the parties' lease agreement. If the parties executed the Second Amendment, the costs would be amortized as part of the rent under the new lease. (*Id.*; *see also* Def. SOF, Doc. No. 67 ¶ 27). The Reimbursement Agreement has an addendum that lists the "Early Start Actions and Cost Summary." (Reimbursement Agreement, Doc. No. 57-6; First Am. Reimbursement Agreement, Doc. No. 59-1).

Ultimately, financing and the increased costs of the project became stumbling blocks. On April 7, 2022, Spring Hill emailed Magna the "final, approved version" of the Second Amendment. (Def. SOF, Doc. No. 67 ¶ 46). Magna executed the Second Amendment. (*Id.* ¶ 49). Spring Hill was waiting for lender approval, which never came. (*Id.* ¶ 46). In the meantime, the projected cost for the project increased. (*Id.* ¶¶ 85, 94, 96). By late July 2022, Spring Hill had decided that it would not sign the Second Amendment even it the lender approved it and was only willing to proceed if Magna would cover the construction overages and/or take on the project itself. (*Id.* ¶¶ 98, 99, 120).

Spring Hill cancelled the construction contract for the expansion on August 26, 2022, and three days later, sent Magna an invoice for $992,834.53 for the expenses it claimed under the Reimbursement Agreement. (*Id.* ¶ 123). Magna refused to pay. (Pl. SOF ¶¶ 86, 88). This lawsuit followed. (*See* Complaint, Doc. No. 1).

2

Case 1:22-cv-00049    Document 80    Filed 03/07/25    Page 2 of 7 PageID #: 3379

Spring Hill seeks a judgment for reimbursement of costs incurred performing the "early start actions" and brings claims for breach of contract, quantum meruit, and promissory estoppel.[2] Spring Hill seeks compensatory damages in the approximate amount of $992,834.25, in addition to pre-judgment interest on these amounts, reasonable attorneys' fees, and consequential damages.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been

---

[2] Spring Hill brings a separate claim for "declaratory judgment" seeking the same relief. "Declaratory judgment, however, is not a cause of action, but a specific type of relief. In order for the plaintiffs to be entitled to declaratory judgment, they must first succeed on a cognizable cause of action." *Duncan v. Tenn. Valley Authority Retirement System*, 123 F. Supp. 3d 972, 982 (M.D. Tenn. 2015).

presented to make the issue of material fact a proper question for the finder of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the finder of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

"The trial court may, however, exercise a sound discretion in denying summary judgment where, although the movant may have technically shouldered his burden, the court is not reasonably certain there is no triable issue of fact; where a portion of an action may be ripe for summary judgment but is intertwined with another claim(s) that must be tried; and in certain other situations." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988) (quoting 6 *Moore's Federal Practice* ¶ 56.15[8] (2d ed. 1985)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that it trial courts may deny summary judgment "where there is reason to believe the better course would be to proceed to a full trial") (citing *Kennedy v. Silas Mason Co.,* 334 U.S. 249 (1948)).

### III. ANALYSIS

Although Spring Hill's claim appears, at first glance, to be a relatively straightforward breach of contract claim, that is not the case. Spring Hill argues it is entitled to reimbursement of the costs of the "early start" actions under the Reimbursement Agreement and that Magna's failure to pay constitutes breach.[3] (Doc. No. 54 at 1). To the extent any of the costs reflected in the invoice are not expressly covered by the Reimbursement Agreement, Spring Hill argues it is still entitled

---

[3] If the Reimbursement Agreement is deemed unenforceable, Spring Hill also brings alternative claims for quantum meruit and promissory estoppel. (*See* Complaint, Doc. No. 1 (Counts III and IV)).

4

to reimbursement under the theory of quantum meruit because "it would be unjust for [Magna] to retain the goods or services without payment." (Doc. No. 54 at 15).

In response, Magna argues Spring Hill had a duty to act in good faith and continue working toward a second amendment and not to frustrate the entire purpose of the Reimbursement Agreement, which Magna asserts was to facilitate a timely delivery of the expansion. (Doc. No. 65 at 14-20; Doc. No. 74 at 2). Magna argues that by refusing to execute a Reimbursement Agreement when it could not secure its preferred form of financing and the costs of the project increased, Spring Hill violated its duty of good faith, and thereby committed the first material breach of the Reimbursement Agreement. (*Id.*).

Magna also argues Spring Hill is equitably estopped from bringing its claims because it made false representations and concealed material facts about the need for and status of lender approval. (Doc. No. 65 at 21-23). Specifically, that Spring Hill concealed its belief that the expansion project was contingent on lender approval until after Magna had executed the Second Amendment and then repeatedly assured Magna that lender approval was imminent even though it knew that financing was unlikely to be approved. (*Id.*). Magna contends Spring Hill's concealment of the prospects of lender approval resulted in Spring Hill incurring additional project costs for which it now seeks reimbursement; and that because the expansion was never built, the pre-construction work was worthless. (Doc. No. 65 at 1-2, 14).

Spring Hill responds that Magna knew or should have known about Spring Hill's relationship with its lender and that the expansion project would require lender approval. (Doc. No. 68 at 14-15). Spring Hill also asserts that it none of its actions or inactions concerning lender approval prejudiced Magna, because the costs associated with the "Early Start Actions" had

5

Case 1:22-cv-00049   Document 80   Filed 03/07/25   Page 5 of 7 PageID #: 3382

already been incurred by the time a decision could be obtained on lender approval. (Doc. No. 68 at 16). Concerning the interpretation of the Reimbursement Agreement itself, Spring Hill contends that the Reimbursement Agreement is a partially integrated agreement – therefore, the Court may consider the parties' pre-contract discussions surrounding the Expansion Project and that those discussions support a finding that securing financing was not an obligation under the Reimbursement Agreement. (*Id*. at 11-12).

The disputes between the parties – particularly on issues of material breach, the duty of good faith, and equitable estoppel –raise questions of fact that cannot be resolved at the summary judgment stage. *See Franklin Am. Mortg. Co. v. Chicago Financial Srvs., Inc*., 145 F. Supp. 3d 725, 733 (M.D. Tenn. 2015) ("Whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case and is ordinarily a question of fact to be determined by the jury or other finder of fact." (quoting *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc*., 395 S.W.3d 653, 671 (Tenn. 2013)); *Lubber, Inc. v. Optari, LLC*, No. 3:11-42, 2013 WL 1245679, at *7 (M.D. Tenn. March 26, 2013) ("the determination whether a material breach has occurred is generally a question of fact answered by weighing the consequences of the breach" (quoting *Hodak v. Madison Capital Mgmt., Inc*., 348 F. App'x 83, 90 (6th Cir. 2009)); *Fitzgerald Truck Parts and Sales, LLC v. United States*, 671 F. Supp. 3d 839, 848 (M.D. Tenn. 2023) ("[W]here an allegation of estoppel raises factual questions on which reasonable minds might disagree, the questions must be resolved at trial by the trier of fact" (quoting *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co*., 936 F.2d 1474, 1493 (6th Cir. 1991)).

Having reviewed the parties' briefs and the record, the Court concludes that the case should proceed to a full trial. Even if certain aspects of the parties' dispute could be decided as a matter of law, the central claims and defenses require determinations of fact. Moreover, because the parties have agreed to a bench trial, judicial efficiency counsels in favor of resolving questions of fact and law following a trial on the merits.

Accordingly, the motions for summary judgment (Doc. Nos. 53, 55) will be **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE